IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

U.S. SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

        v.

JAMES E. HENGEN,

        Defendant.

Civil Action No. _____

# COMPLAINT

Plaintiff U.S. Securities and Exchange Commission (the "Commission") alleges as follows:

## SUMMARY OF THE ACTION

1. This case concerns unlawful insider trading by James E. Hengen in the securities of two companies: USMD Holdings, Inc., a Texas-based company that manages a network of healthcare clinics, hospitals, and other medical facilities, and Surgical Care Affiliates, Inc., an Illinois-based company that manages a network of ambulatory surgery centers and surgical hospitals.

2. In summer 2016, Hengen misappropriated from his wife, an executive at UnitedHealth Group, Inc., material, nonpublic information that UnitedHealth was in negotiations to acquire USMD. In breach of his duty of trust and confidence to his wife, Hengen misused this information to purchase in his personal accounts shares of USMD stock. Between June 27, 2016 and August 29, 2016, Hengen purchased more than 8,000 shares of USMD stock, and also tipped his brother and three coworkers, who purchased 3,300 shares of USMD stock.

3. On the morning of August 30, 2016, UnitedHealth and USMD publicly announced that they had entered into a definitive agreement for UnitedHealth to acquire USMD at a price of $22.34 per share. That day, after the public announcement of the acquisition, the price of USMD stock increased over 8% on heavy trading and closed at a price of $22.18 per share. Hengen, who sold most of his USMD stock the day of the announcement, made $32,315 in illicit profits from trading in USMD stock. Hengen's brother and coworkers, all of whom sold their USMD stock shortly after the acquisition announcement, collectively made $8,340 from trading on Hengen's illegal tips.

4. Months later, in December 2016, Hengen again misappropriated from his wife material nonpublic information. This time Hengen misappropriated information that UnitedHealth was in negotiations to acquire Surgical Care. In breach of his duty of trust and confidence to his wife, Hengen misused the information and purchased in his personal account 3,160 shares of Surgical Care stock between December 27, 2016 and December 30, 2016.

5. On the morning of January 9, 2017, UnitedHealth and Surgical Care publicly announced that they had entered into an agreement for UnitedHealth to acquire Surgical Care through a tender offer at a price of $57 per share. That day, after the public announcement of the acquisition, the price of Surgical Care stock increased over 16% on heavy trading and closed at a price of $56.65 per share. Hengen sold all of his Surgical Care stock that day. His illicit profits from trading in Surgical Care stock totaled $31,489.

6. By engaging in the conduct alleged in this Complaint, Hengen violated the antifraud provisions of Sections 10(b) and 14(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b) and 78n(e)], and Rules 10b-5 and 14e-3 thereunder

[17 C.F.R. §§ 240.10b-5 and 240.14e-3]. The Commission seeks in this action a permanent injunction, disgorgement with prejudgment interest, and a civil penalty.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action under Sections 21(d), 21(e), 21A, and 27 of the Exchange Act of 1934 [15 U.S.C. §§ 78u(d), 78u(e), 78u-1 and 78aa].

8. The Commission brings this action under Section 21(d) and 21A of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u-1]. Defendant, directly or indirectly, made use of the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange in connection with the transactions, acts, practices, and courses of business alleged in this Complaint.

9. Venue is proper in this district under Section 27 of the Exchange Act [15 U.S.C. § 78aa] because Defendant resides in and because one or more acts or transactions constituting the violation occurred within the District of Minnesota.

## DEFENDANT

10. James Hengen ("Hengen"), age 52, resides in Chanhassen, Minnesota. During the relevant time period, Hengen was employed as an airplane mechanic in Minneapolis, Minnesota.

## OTHER RELEVANT ENTITIES

11. UnitedHealth Group, Inc. ("UnitedHealth") is a Delaware corporation based in Minnetonka, Minnesota. UnitedHealth's common stock is registered with the Commission pursuant to Section 12(b) of the Exchange Act [15 U.S.C. § 78l(b)] and trades on the New York Stock Exchange.

12. USMD Holdings, Inc. ("USMD") was a Delaware corporation based in Irving, Texas, that managed a network of physician-led healthcare clinics, hospitals, and other medical facilities in Texas. Prior to its acquisition by UnitedHealth, which was completed in

September 2016, USMD's common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act [15 U.S.C. § 78l(b)] and traded on the NASDAQ.

13. Surgical Care Affiliates, Inc. ("Surgical Care") was a Delaware corporation based in Deerfield, Illinois. Surgical Care was a company that managed a network of ambulatory surgery centers and surgical hospitals. Prior to its acquisition by UnitedHealth, which was completed in March 2017, Surgical Care's common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act [15 U.S.C. § 78l(b)] and traded on the NASDAQ.

## FACTS

14. At all relevant times in this Complaint, Hengen's wife was a vice president of human capital at a UnitedHealth subsidiary. As part of her responsibilities, Hengen's wife worked on human resource aspects of mergers and acquisitions, including the potential effects of a transaction on employment contracts and the retention of key staff. As part of her work, Hengen's wife regularly received and worked with confidential information about companies UnitedHealth was in negotiations to acquire.

### USMD Holdings, Inc.

15. In June 2015, UnitedHealth initiated negotiations to acquire USMD. The negotiations, which were confidential, continued off and on for more than a year. In March 2016, UnitedHealth submitted a written proposal to acquire USMD, but negotiations continued over physician and executive team retention and other issues, and the merger was not finalized for another six months. Hengen's wife was involved in these negotiations and on occasion travelled to Texas as part of them.

16. During the relevant time period, Hengen's wife typically worked from home at least once a week. When she worked from home, she would frequently set up a workstation at the dining room table.

4

17.     One morning in June 2016, before his shift began in the afternoon at the airport, Hengen, who was in the upstairs bedroom at the time, overheard his wife on a work conference call. He heard her mention the words "USMD" and "Dr. House." Hengen searched the internet for both terms and learned that USMD was a healthcare company based in Texas and that "Dr. House" was Dr. John House, Chairman and CEO at USMD. Hengen knew that his wife had been traveling to Texas frequently for work, and that her work involved mergers and acquisitions. Based on these facts, Hengen concluded that UnitedHealth was in negotiations to acquire USMD.

18.     Hengen knew the information about UnitedHealth's potential acquisition of USMD was both material and nonpublic. He knew that it could be profitable to trade on the information and purchase shares of USMD stock. He also knew that it would be wrong to do so. For approximately two weeks, Hengen debated whether he should use this information to purchase shares of USMD.

19.     On or about June 27, 2016, Hengen decided to trade on the material and nonpublic information concerning the acquisition of USMD. That day, in breach of his duty of trust and confidence to his wife, Hengen bought 5,657 shares of USMD stock for an average price of $16.33 per share in two personal brokerage accounts.

20.     Beginning on or about the same date, and again in breach of his duty to his wife, Hengen also tipped his brother and three coworkers, recommending that they too buy USMD stock. Hengen did this because he wanted to provide them with a gift of a stock tip from which they could profit.

21.     On or about June 27, 2016, Hengen recommended to his brother that he purchase USMD stock. Hengen told his brother that there likely would be a merger between USMD and

5

UnitedHealth. On June 27, 2016, acting on this tip, Hengen's brother purchased 300 shares of USMD stock for $16.19 per share.

22. On or about June 27, 2016, Hengen recommended to Coworker 1 that he purchase USMD stock. On June 28, Coworker 1 bought 100 shares of USMD for $16.83 per share. On June 30, Coworker 1 bought an additional 350 shares of USMD for $18.75 per share.

23. On or before July 11, 2016, Hengen saw Coworker 2 at work and recommended to him that he buy USMD stock. On July 11, 2016, Coworker 2, intending to buy 1,000 shares of USMD, mistakenly bought just 1 share of USMD for $17.50. On August 29, 2016, Coworker 2 bought the remaining 999 shares of USMD at $20.45 per share.

24. On or before July 13, 2016, Hengen recommended to Coworker 3 that he buy stock in USMD. On July 13, 2016, Coworker 3 bought 100 shares of USMD for $18.02 per share.

25. In July and August 2016, Hengen attempted to obtain updated information about the status of the acquisition from his wife. He paid attention to her work phone calls that he could overhear, and he asked how her work was going and whether her recent business trips to Texas had been successful. Hengen concluded from her responses that work was going well and that the acquisition negotiations were progressing. By late August Hengen expected the acquisition to be announced within a few weeks.

26. Through August 2016, Hengen continued to trade on material nonpublic information concerning the acquisition of USMD. On August 5, 2016, Hengen sold 2,557 shares of USMD stock for $19.90 per share. On August 16, Hengen purchased 2,000 shares for $20.01 per share. On August 26, he purchased another 400 shares at $20.33 per share. On August 29, Hengen purchased an additional 46 shares for $20.49 per share.

6

27. Hengen also continued tipping material nonpublic information concerning the impending acquisition to his brother and coworkers throughout July and August 2016, and they continued purchasing additional shares of USMD.

28. For example, in a text message exchange on July 22, 2016, Hengen told Coworker 1 to "Hang on to usmd" because "Good news coming soon." The next month, in a text message exchange on August 26, 2016, Hengen told Coworker 1 that "Big news [is] coming soon for usmd" and to "Make sure u have usmd before market close." That same day, Coworker 1 bought an additional 1,000 shares of USMD for $20.43 per share.

29. Between July 25 and August 19, 2016, Coworker 3 bought an additional 400 shares of USMD, at prices ranging from $19.99 to $20.77 per share. On August 26, 2016, Hengen's brother bought an additional 50 shares of USMD for $20.33 per share.

30. On August 30, 2016, before the market opened, UnitedHealth and USMD announced that they had reached an agreement whereby UnitedHealth would acquire USMD. Under the terms of the agreement, shareholders of USMD would receive $22.34 per share. That day, after the public announcement of the acquisition, the market price of USMD stock increased more than 8% on heavy trading and closed at a price of $22.18 per share.

31. That day, after the acquisition announcement, Hengen sold 5,500 shares of USMD stock for $22.16 per share. Hengen later received $22.34 for his remaining 46 shares of USMD stock, which he held through the close of the acquisition on October 3, 2016. Hengen's illicit profits from trading in USMD stock totaled $32,315.

32. Hengen's brother and coworkers sold all of their shares of USMD stock on August 30 and August 31, 2016. Their combined profits from trading on Hengen's unlawful tips totaled $8,340.

7

### Surgical Care Affiliates, Inc.

33. In late July 2016, UnitedHealth entered into negotiations to acquire Surgical Care. Negotiations were put on hold in September 2016 and then resumed in December 2016. By late December 2016, UnitedHealth had taken substantial steps towards commencement of a tender offer for Surgical Care securities. These included a meeting on December 16 between the CEOs of UnitedHealth and Surgical Care at which they reached agreement on major terms of the proposed acquisition (including the per share acquisition price), the execution of a confidentiality agreement on December 19, and due diligence work.

34. Hengen's wife was informed of UnitedHealth's potential acquisition of Surgical Care on December 20, 2016. She participated in two conference calls about the potential acquisition on December 21 and 22, 2016.

35. On or about December 27, 2016, on a day Hengen's wife was working from home, Hengen walked through the dining room where his wife was working. She was not in the room at that moment. Hengen opened his wife's notebook that was on the table and saw references to Surgical Care Affiliates. Knowing that his wife worked on corporate acquisitions for UnitedHealth, Hengen concluded that UnitedHealth likely was in negotiations to acquire the company referenced in his wife's notebook. Hengen knew this information was both material and nonpublic, and that it was wrong for him to trade on it.

36. In breach of his duty to his wife, Hengen traded on the material nonpublic information he misappropriated from his wife concerning UnitedHealth's potential acquisition of Surgical Care. Between December 27 and December 30, 2016, Hengen purchased in his personal accounts a total of 3,160 shares of Surgical Care stock, at an average purchase price of $46.54 per share.

37. On the morning of January 9, 2017, UnitedHealth and Surgical Care announced that they had entered into a definitive agreement for UnitedHealth to acquire Surgical Care, pursuant to a tender offer, at a price of $57 per share. The agreed purchase price represented a premium of more than 16% over the prior market closing price of Surgical Care stock of $48.75 per share. That day, after the public announcement of the acquisition, the market price of Surgical Care stock increased more than 16% on heavy trading and closed at a price of $56.65 per share. Hengen sold his Surgical Care stock that day. Hengen's illicit profits from trading in Surgical Care stock totaled $31,489.

## FIRST CLAIM FOR RELIEF

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

38. The Commission realleges and incorporates by reference paragraphs 1 through 37 above.

39. Defendant, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of securities, by use of the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

    a. employed devices, schemes, or artifices to defraud;

    b. made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

    c. engaged in acts, practices, or courses of business which operate or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities.

40. By engaging in the foregoing conduct, Defendant violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF

### Violations of Section 14(e) of the Exchange Act and Rule 14e-3 Thereunder

41. The Commission realleges and incorporates by reference paragraphs 1 through 37 above.

42. By engaging in the conduct described above, in connection with a tender offer, Defendant knowingly or recklessly, engaged in one or more fraudulent, deceptive, or manipulative acts.

43. By reason of the foregoing, Defendant violated, and unless enjoined will continue to violate, Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)] and Rule 14e-3 thereunder [17 C.F.R. § 240.14e-3].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter Final Judgment:

### I.

Permanently restraining and enjoining Defendant from, directly or indirectly, engaging in conduct in violation of Sections 10(b) and 14(e) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78n(e)] and Rules 10b-5 and 14e-3 thereunder [17 C.F.R. §§ 240.10b-5 and 240.14e-3];

### II.

Ordering Defendant to disgorge, with prejudgment interest, his illicit trading profits resulting from the conduct alleged in this Complaint;

### III.

Ordering Defendant to pay a civil penalty pursuant to Section 21A of the Exchange Act, [15 U.S.C. § 78u-1]; and

### IV.

Granting such other and further relief as this Court may deem just and necessary.

DATED: November 8, 2018

Respectfully submitted,

_____
David T. Frisof (IL No. 6317536)
frisofd@sec.gov
U.S. Securities and Exchange Commission
100 F Street NE
Washington, DC 20549-5020
Phone: (202) 551-7702
Facsimile: (202) 772-9286

Attorney for Plaintiff
Securities and Exchange Commission